**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| CAUSAM ENTERPRISES, INC., | |
| *Plaintiff*, | No. 6:21-CV-00751 |
| v. | **JURY TRIAL DEMANDED** |
| ALARM.COM, INC., | |
| *Defendant*. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement under the patent laws of the United States of America, 35 U.S.C. § 100 *et seq.*, in which Plaintiff Causam Enterprises, Inc. ("Plaintiff" or "Causam") makes the following allegations against Defendant Alarm.com, Inc. ("Defendant" or "Alarm.com"):

**INTRODUCTION**

1.      A decade ago, utility companies and electric grid operators sought to improve the reliability of electric power provided to their customers by initiating Demand Response programs to reduce the demand of power consuming devices at customer homes on their grids, but they faced technological challenges to measure and understand the electric operating reserves created by these programs. Inventor and entrepreneur Joseph Forbes, Jr. correctly identified this problem in the market, and set to work developing solutions. Through a combination of hard work, North Carolinian grit, and a clear vision of the future of smart power management, Mr. Forbes invented practical and system-based solutions and methods for Demand Response and smart electric management. The United States Patent & Trademark Office awarded Mr. Forbes with more than a hundred patents, including the four patents asserted in this case.

Complaint - Page 1

2.      Mr. Forbes and the company he founded, Causam Enterprises, Inc., pioneered an unconventional power management architecture capable of actively managing, measuring, and verifying reductions of power on a per-customer basis. Causam's patented methods are ground-breaking, because they enable grid operators to measure the amount of power consumed by individual power-consuming devices in customers' homes, and the power saved by reducing the demand of those devices. These claims covering systems and methods improve the reliability of electric service, reduce the strain on the electric system during peak demand times, eliminate harmful carbon emissions, and save customers money, among other tangible benefits. As a result of the success of Causam's patents in providing reliable, cheaper energy, market entrants sprung forth to capitalize on these new discoveries through unauthorized use of Causam's patented technology.

3.      Causam's patented technology asserted in this case includes U.S. Patent Nos. 9,678,522 ("'522 Patent"); 10,394,268 ("'268 Patent"); 10,396,592 ("'592 Patent"); and 8,805,552 ("'552 Patent") (collectively, the "Asserted Patents," true and correct copies of which are attached hereto as Exhibits 1 through 4, respectively).

4.      Defendant Alarm.com, a Delaware corporation, is one such company unfairly profiting from Causam's patented technology. As described below, several of Alarm.com's products utilize Causam's patented systems and methods without license or permission.

5.      To protect its hard-earned intellectual property rights from unlawful interference, Causam brings this action for patent infringement against Alarm.com.

## NATURE OF THE ACTION

6.      This Complaint arises under 35 U.S.C. § 271 for Defendant's unlawful infringement of the '522 Patent, the '268 Patent, the '592 Patent, and the '552 Patent. Causam owns all right, title, and interest in each of the Asserted Patents.

## THE PARTIES

7.      Causam is a Delaware corporation having its principal place of business at 8480 Honeycutt Road, Suite 200 Raleigh, NC 27615.

8.      Causam was first incorporated on October 10, 2013 under the name Causam Energy, Inc. On January 18, 2018, Causam Energy, Inc. was renamed Causam Enterprises, Inc. (the entity referred to herein as "Causam").

9.      Causam is also the owner of all right, title, and interest in and to the Asserted Patents.

10.      On information and belief, Defendant Alarm.com is a Delaware corporation with its principal place of business at 8281 Greensboro Drive, Suite 100, Tysons, VA 22102.

## JURISDICTION AND VENUE

11.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

12.      This Court has personal jurisdiction over Alarm.com. On information and belief, Defendant has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Moreover, personal jurisdiction in this District exists because Defendant has purposefully availed itself on the laws and protection of the Western District of Texas by litigating a patent infringement action in this District. *See, e.g., Alarm.com Inc. v. Protect Am., Inc.*, 1-18-cv-00521 (W.D. Tex.). Personal jurisdiction also exists specifically over Defendant, because, on information and belief, Defendant directly and through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District, by, among other things, using, offering for sale, selling, importing, advertising, making

available and marketing products within the State of Texas and within the Western District of Texas, that infringe the Asserted Patents, as described below. For example, Defendant's infringing products are featured as eligible devices for participation in customer incentive programs carried out by Austin Energy and CPS Energy in this District. Moreover, Defendant advertises and links through its website to businesses that sell and install the infringing products within this District. Finally, businesses within this District advertise the sale and installation of Defendant's infringing products.

13.     Venue is proper in this District under 28 U.S.C. § 1400(b). On information and belief, Defendant maintains a regular and established place of business in this District through its dealer ATX Alarm. Defendant advertises and holds ATX Alarm out as a location of Defendant on Alarm.com's website, where Defendant describes ATX Alarm as "Your Local Alarm.com Dealer":

## About Atx Alarm Company
Your Local Alarm.com Dealer
Austin | TX | 78726
512-497-3410
http://www.alarm.com/US/atxalarm

Terms & Conditions | Privacy Policy
Copyright © 2000-2021, Alarm.com. All rights reserved.
Alarm.com and the Alarm.com Logo are registered trademarks of Alarm.com.

Request a Consultation                                    powered by ⌂ ALARM.COM

*See* https://www.alarm.com/US/atxalarm?home=1. On information and belief, ATX Alarm is located in this District at 12320 Alameda Trace Cir, Austin, TX 78727. Moreover, Defendant has committed acts of infringement in the Western District of Texas and has appeared in the Western District of Texas, including at least in prosecuting patent infringement claims against Protect America.  *See, e.g., Alarm.com Inc. v. Protect Am., Inc.*, 1-18-cv-00521 (W.D. Tex.).

## FACTUAL BACKGROUND

## CAUSAM'S PATENTED DEMAND RESPONSE TECHNOLOGY

14.     To ensure the uninterrupted operation of electric power grids, serving utilities are required by regulatory authorities, such as the Federal Regulatory Energy Commission ("FERC") and the North American Electric Reliability Corporation ("NERC"), to maintain substantial "backup" stores of electric power known as "operating reserves." In periods of peak demand, such as heat waves, the supply of power actively flowing across an electric grid is often insufficient to satisfy that demand. In response, operating reserves are employed to generate additional power supply and ensure that their customers do not suffer brownouts or blackouts, like those suffered by so many Texans in February 2021.

15.     Because demand for power is highly elastic, but its supply necessarily finite, techniques for efficiently allocating operating reserves emphasize reducing demand rather than increasing supply. One such widely used technique is "demand response," which operates by incentivizing customers, through discounts on utility bills, to voluntarily reduce their consumption of power during periods of peak demand. For example, on hot summer days, customers who have signed up for a utility's demand response program are able to raise the temperature of their homes while they are away at work. In exchange, such customers receive discounts proportional to the amount of power they have reduced, and thus the additional reserve capacity they have generated. The aggregate reduction of demand achieved by such demand response programs often eliminates the need to build additional, expensive, and environmentally hazardous electricity generation capacity.

16.     At the time of the Asserted Patents, however, demand response programs had a severe impediment: the "one-way" and incipient "two-way" load control systems deployed to implement such programs were incapable of precisely measuring if, and if so by how much, any

Complaint - Page 5

individual customer had reduced his or her power consumption, and therefore prevented determination of how much additional power supply individual customers had generated. This imprecision made it difficult, if not impossible, to accurately estimate the operating reserves remaining, and to adequately compensate customers for generating those reserves.

17.     "One-way" systems employed load control devices, such as RF-controlled relay switches attached to a customer's air conditioner, that were capable only of sending rather than receiving. With no "return path" from the load control device back to the control center, and no ability to analyze, measure, and verify the actual power consumed by customers, such one-way architectures were "highly inefficient for measuring the actual load shed to the serving utility." *See, e.g.*, Ex. 1 ('522 Patent) at 2:7-17, 1:46-52.

18.     Similarly, although the incipient "two-way" systems extant at the time of Asserted Patents were able to transmit some data back to "host processors," they disclosed no mechanism to "track[] or accumulate[]" the "power saved" on a "per customer or per utility basis for future use by the utility." *See, e.g.*, Ex. 1 ('522 Patent) at 3:20-28.

19.     Seeking to address the imprecision of prior demand response systems, Causam pioneered an innovative power management architecture capable of actively managing, measuring, and verifying reductions of power on a per-customer basis. As disclosed in the Asserted Patents, Causam's architecture employs a "load management server" to actively monitor, control, and measure the power consumed by, "power consuming devices," such as A/C units and water heaters. Internet-enabled "two-way" load control devices, such as smart thermostats, smart meters, and digital control units, take real-time measurements of the power consumed by each monitored "power consuming device," and send back those measurements to the load management server for immediate aggregation and analysis. *See, e.g.*, Ex. 1 ('522 Patent) at 7:8-29. "When the serving utility needs more power than it is currently able to supply,"

i.e., during a demand response event, Causam's power management architecture is able to "automatically adjust[] the power distribution by turning off specific loads on an individual subscriber basis." *Id*. Furthermore, "[b]ecause the amount of power consumed by each specific" power-consuming device "is known," Causam's architecture "can determine precisely which loads to turn off and track[] the power savings generated by each customer as a result of this short-term outage." *Id*.

20.     Finally, Causam's novel power management architecture translates the power savings generated by each customer into a "power supply value," ("PSV"), which "may be provided in units of electrical power flow, monetary equivalent, and combinations thereof," *Id*. at 7:40-60. That PSV enables Causam's architecture to precisely track how much additional power supply customers have generated, and the operating reserves remaining.

21.     These unconventional features of the systems and methods of the Asserted Patents are specifically tied to and reflected in the claims. For example, claim 1 of the '522 Patent describes the steps of "receiving a power control message from the load management server," that is "responsive to a power control request and indicating at least one of an amount of electric power to be reduced, disabled, or enabled," and includes an "identification of at least one controllable device," while also "generating a power supply value (PSV) corresponding to the reduction in consumed power." *See* Ex. 1 ('522 Patent) at claim 1; *see also* Ex. 4 ('552 Patent) at claim 1. Similarly, claim 1 of the '268 Patent further includes "generating measurement and verification data corresponding to the reduction in consumed power." *See* Ex. 2 ('268 Patent) at claim 1. The '592 Patent further claims that "the actual value of power reduced is a curtailment value as supply equivalence and provides operating reserve for the electric power grid." *See* Ex. 3 ('592 Patent) at claim 1. These system and method claims do not recite a general or abstract idea but instead reflect Mr. Forbes' unconventional, novel approach to demand response.

22.     Causam's breakthrough demand response solutions have been offered through channel partners such as utilities, energy retailers, broadband service providers, and HVAC companies. For example, Causam's licensee Landis + Gyr offers electric utility providers a comprehensive array of smart grid solutions tailored to execute demand response strategies. Landis + Gyr emphasizes the use of demand response programs to provide a strategic, real-time operational resource for cost-effective and reliable peak power adjustments and overall load management.[1]

### ALARM.COM'S INFRINGEMENT OF THE ASSERTED PATENTS

23.     The Alarm.com Accused Products include all Alarm.com smart thermostats having demand response functionality and/or compatible with EnergyHub Mercury DERMS Platform.

24.     Known Alarm.com Accused Products include: the Alarm.com Smart Thermostat; the ADC-T2000; the ADC-T3000; and the Alarm.com Smart Thermostat B36-T10 (collectively, the "Alarm.com Accused Products"). An example of an Alarm.com Accused Product, the Alarm.com ADC-T3000 Smart Thermostat, is shown below.



Exhibit 5 (ADC-T3000 Specification Sheet).

25.     Upon information and belief, the Alarm.com Accused Products are specifically designed, and especially made and adapted, to infringe claims of the Asserted Patents and to

---

[1] *See generally*, https://www.landisgyr.com/challenge/demand-response/.

embody a material part of the claimed inventions. The Alarm.com Accused Products are imported into the United States with this infringing design. The Alarm.com Accused Products are then installed and used in the United States in users' homes according to Alarm.com's design and instructions.

26.     Upon information and belief, Alarm.com actively encourages users to use the Alarm.com Accused Products in the normal and intended manner, and according to Alarm.com's design and instructions, which infringes certain claims of the Asserted Patents. The Alarm.com Accused Products are not staple articles or commodities suitable for substantial non-infringing use. Thus, these acts each constitute an unlawful and unfair act.

27.     Causam now brings this action for patent infringement to protect its intellectual property rights.

## COUNT I
### (Direct Infringement of U.S. Patent No. 9,678,522)

28.     Causam realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

29.     Causam owns all rights, title, and interest in the '522 Patent, entitled "Method and Apparatus for Actively Managing Consumption of Electric Power Over an Electric Power grid," duly and legally issued by the PTO on June 13, 2017. *See* Ex. 1.

30.     The '522 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

31.     Alarm.com has had notice of the '522 Patent since at least the filing of this Complaint.

32.     Alarm.com has directly infringed the '522 Patent—literally and/or through the doctrine of equivalents—by making, using, selling, offering for sale in the United States, and/or importing into the United States smart thermostats and components thereof that practice at least

claims 1-8, 10, and 13-23, 25-29 of the '522 patent ("the '522 Patent Asserted Claims"),

including but not limited to the Alarm.com Accused Products. Through these actions, Alarm.com

directly violates 35 U.S.C. § 271(a).

33.     Based on publicly available information, Alarm.com makes, uses, offers for sale,

sells, and/or imports certain products, such as the Alarm.com Smart Thermostat; the ADC-

T2000; the ADC-T3000; and the Alarm.com Smart Thermostat B36-T10, that directly infringe,

literally and/or under the doctrine of equivalents, at least the Asserted Claims of the '522 Patent.

34.     The Accused Products satisfy all limitations of at least the '522 Patent Asserted

Claims. A claim chart comparing exemplary claim elements of some of the '522 Patent Asserted

Claims to the Accused Products is attached as Exhibit 6.

35.     At least as of the filing of this Complaint, Alarm.com is on notice that its

infringement has been, and continues to be, knowing, intentional and willful.

36.     Alarm.com's acts of infringement of the '522 Patent has directly and proximately

caused and will continue to cause Causam damages for which it is entitled to compensation

pursuant to 35 U.S.C. § 284.

37.     Alarm.com's acts of infringement of the '522 Patent have directly and

proximately caused, and will continue to cause, Causam immediate and irreparable harm, for

which Causam has no adequate remedy at law, unless such infringing activities are enjoined by

this Court pursuant to 35 U.S.C. § 283.

## COUNT II
### (Indirect Infringement of U.S. Patent No. 9,678,522)

38.     Causam realleges and incorporates by reference the foregoing paragraphs, as if

fully set forth herein.

39.     Alarm.com has had notice of the '522 Patent since at least the filing of this

Complaint.

Complaint - Page 10

40.     Alarm.com indirectly infringes the '522 Patent in violation of 35 U.S.C. § 271(b) by actively encouraging and inducing its customers and end users to use the Accused Products in ways that directly infringe at least the Asserted Claims. Alarm.com does so intentionally and knowing that its customers will directly infringe the '522 Patent Asserted Claims through the normal and customary use of the Alarm.com Accused Products.

41.     Alarm.com's affirmative acts of providing instructions, manuals, training, guides, marketing materials, and demonstrations induces distributors and customers to use the Alarm.com Accused Products in a manner intended by Alarm.com to cause infringement of the '522 Patent.

42.     Alarm.com performed the acts that constitute inducement with knowledge or at least willful blindness that the induced acts would constitute infringement. At least through the filing of this Complaint, Alarm.com has received actual notice that its distributors and customers directly infringe the '522 Patent Asserted Claims and that its own acts induce such infringement.

43.     Alarm.com also indirectly infringes the '522 Patent in violation of 35 U.S.C. § 271(c) by knowingly and intentionally contributing to infringement of at least the Asserted Claims of the '522 Patent by others, including Alarm.com's distributors and customers who purchase and use the Alarm.com Accused Products.

44.     Alarm.com's affirmative acts of selling infringing smart thermostats and providing those products to distributors and customers contribute to the infringement of the '522 Patent. The Alarm.com Accused Products are specially made or adapted for use in infringement of the '522 Patent and are not staple articles of commerce suitable for substantial noninfringing use.

45.     Alarm.com contributed, and is contributing, to the infringement of others with knowledge or at least willful blindness that the Alarm.com Accused Products are specially made

or adapted for use in an infringement of the '522 Patent and are not staple articles of commerce suitable for substantial noninfringing use. Through the filing of this Complaint, Alarm.com has received actual notice that its acts constitute contributory infringement.

46.      The Accused Products satisfy all limitations of at least the '522 Patent Asserted Claims. A claim chart comparing exemplary claim elements of some of the '522 Patent Asserted Claims to the Accused Products is attached as Exhibit 6.

47.      At least as of the filing of this Complaint, Alarm.com is on notice that its infringement has been, and continues to be, knowing, intentional and willful.

48.      Alarm.com's acts of infringement of the '522 Patent have directly and proximately caused and will continue to cause Causam damages for which it is entitled to compensation pursuant to 35 U.S.C. § 284.

49.      Alarm.com's acts of infringement of the '522 Patent have directly and proximately caused, and will continue to cause, Causam immediate and irreparable harm, for which Causam has no adequate remedy at law, unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.

## COUNT III
### (Direct Infringement of U.S. Patent No. 10,394,268)

50.      Causam realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

51.      Causam owns all rights, title, and interest in the '268 Patent, entitled "Method and Apparatus for Actively Managing Consumption of Electric Power Over an Electric Power grid," duly and legally issued by the PTO on August 27, 2019. *See* Ex. 2.

52.      The '268 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

53.      Alarm.com has had notice of the '268 Patent since at least the filing of this

Complaint - Page 12

Complaint.

54.     Alarm.com has directly infringed the '268 Patent— literally and/or through the doctrine of equivalents — by making, using, selling, offering for sale in the United States, and/or importing into the United States smart thermostats and components thereof that practice at least claims 1-11, and 13-19 of the '268 Patent ("the '268 Patent Asserted Claims"), including but not limited to the Alarm.com Accused Products. Through these actions, Alarm.com directly violates 35 U.S.C. § 271(a).

55.     Based on publicly available information, Alarm.com makes, uses, offers for sale, sells, and/or imports certain products, such as the Alarm.com Smart Thermostat; the ADC-T2000; the ADC-T3000; and the Alarm.com Smart Thermostat B36-T10, that directly infringe, literally and/or under the doctrine of equivalents, the '268 Patent Asserted Claims.

56.     The Alarm.com Accused Products satisfy all limitations of the '268 Patent Asserted Claims. A claim chart comparing exemplary claim elements of some of the Asserted Claims of the '268 Patent to the Accused Products is attached as Exhibit 7.

57.     At least as of the filing of this Complaint, Alarm.com is on notice that its infringement has been, and continues to be, knowing, intentional and willful.

58.     Alarm.com's acts of infringement of the '268 Patent have directly and proximately caused and will continue to cause Causam damages for which it is entitled to compensation pursuant to 35 U.S.C. § 284.

59.     Alarm.com's acts of infringement of the '268 Patent have directly and proximately caused, and will continue to cause, Causam immediate and irreparable harm, for which Causam has no adequate remedy at law, unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.

## COUNT IV
### (Indirect Infringement of U.S. Patent No. 10,394,268)

60.     Causam realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

61.     Alarm.com has had notice of the '268 Patent since at least the filing of this Complaint.

62.     Alarm.com indirectly infringes the '268 Patent in violation of 35 U.S.C. § 271(b) by actively encouraging and inducing its customers and end users to use the Accused Products in ways that directly infringe at least the '268 Patent Asserted Claims. Alarm.com does so intentionally and knowing that its customers will directly infringe the Asserted claims of the '268 Patent through the normal and customary use of the Alarm.com Accused Products.

63.     Alarm.com's affirmative acts of providing instructions, manuals, training, guides, marketing materials, and demonstrations induces distributors and customers to use the Alarm.com Accused Products in a manner intended by Alarm.com to cause infringement of the '268 Patent.

64.     Alarm.com performed the acts that constitute inducement with knowledge or at least willful blindness that the induced acts would constitute infringement. At least through the filing of this Complaint, Alarm.com has received actual notice that its distributors and customers directly infringe the '268 Patent and that its own acts induce such infringement.

65.     Alarm.com also indirectly infringes the '268 Patent in violation of 35 U.S.C. § 271(c) by knowingly and intentionally contributing to infringement of at least the '268 Patent Asserted Claims by others, including Alarm.com's distributors and customers who purchase and use the Alarm.com Accused Products.

66.     Alarm.com's affirmative acts of selling infringing smart thermostats and providing those products to distributors and customers contribute to the infringement of the '268 Patent. The Alarm.com Accused Products are specially made or adapted for use in infringement of the '268

Patent and are not staple articles of commerce suitable for substantial noninfringing use.

67.     Alarm.com contributed, and is contributing, to the infringement of others with knowledge or at least willful blindness that the Alarm.com Accused Products are specially made or adapted for use in an infringement of the '268 Patent and are not staple articles of commerce suitable for substantial noninfringing use. Through the filing of this Complaint, Alarm.com has received actual notice that its acts constitute contributory infringement.

68.     The Alarm.com Accused Products satisfy all limitations of the '268 Patent Asserted Claims. A claim chart comparing exemplary claim elements of some of the '268 Patent Asserted Claims to the Alarm.com Accused Products is attached as Exhibit 7.

69.     At least as of the filing of this Complaint, Alarm.com is on notice that its infringement has been, and continues to be, knowing, intentional and willful.

70.     Alarm.com's acts of infringement of the '268 Patent have directly and proximately caused, and will continue to cause Causam damages for which it is entitled to compensation pursuant to 35 U.S.C. § 284.

71.     Alarm.com's acts of infringement of the '268 Patent have directly and proximately caused, and will continue to cause, Causam immediate and irreparable harm, for which Causam has no adequate remedy at law, unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.

## COUNT V
### (Direct Infringement of U.S. Patent No. 10,396,592)

72.     Causam realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

73.     Causam owns all rights, title, and interest in U.S. Patent No. 10,396,592, titled "System and Method for Estimating and Providing Dispatchable Operating Reserve Energy Capacity Through Use of Active Load Management," issued August 27, 2019. *See* Ex. 3.

74.     The '592 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

75.     Alarm.com has had notice of the '592 Patent since at least the filing of this Complaint.

76.     Alarm.com has directly infringed the '592 Patent— literally and/or through the doctrine of equivalents — by making, using, selling, offering for sale in the United States, and/or importing into the United States smart thermostats and components thereof that practice at least claims 1-2, 5-6, 8-9, 11, 13-14 and 17 of the '592 Patent ("the '592 Patent Asserted Claims"), including but not limited to the accused products. Through these actions, Alarm.com directly violates 35 U.S.C. § 271(a).

77.     Based on publicly available information, Alarm.com makes, uses, offers for sale, sells, and/or imports certain products, such as the Alarm.com Smart Thermostat; the ADC-T2000; the ADC-T3000; and the Alarm.com Smart Thermostat B36-T10, that directly infringe, literally and/or under the doctrine of equivalents, at least the '592 Patent Asserted Claims.

78.     The Alarm.com Accused Products satisfy all limitations of at least the '592 Patent Asserted Claims. A claim chart comparing exemplary claim elements of some of the '592 Patent Asserted Claims to the Alarm.com Accused Products is attached as Exhibit 8.

79.     At least as of the filing of this Complaint, Alarm.com is on notice that its infringement has been, and continues to be, knowing, intentional and willful.

80.     Alarm.com's acts of infringement of the '592 Patent have directly and proximately caused and will continue to cause Causam damages for which it is entitled to compensation pursuant to 35 U.S.C. § 284.

81.     Alarm.com's acts of infringement of the '592 Patent have directly and proximately caused, and will continue to cause, Causam immediate and irreparable harm, for

which Causam has no adequate remedy at law, unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.

## COUNT VI
### (Indirect Infringement of U.S. Patent No. 10,396,592)

82.    Causam realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

83.    Alarm.com has had notice of the '592 Patent since at least the filing of this Complaint.

84.    Alarm.com indirectly infringes the '592 Patent in violation of 35 U.S.C. § 271(b) by actively encouraging and inducing its customers and end users to use the Alarm.com Accused Products in ways that directly infringe the '592 Patent Asserted Claims. Alarm.com does so intentionally and knowing that its customers will directly infringe the Asserted Claims of the '592 Patent through the normal and customary use of the Alarm.com Accused Products.

85.    Alarm.com's affirmative acts of providing instructions, manuals, training, guides, marketing materials, and demonstrations induces distributors and customers to use the Accused Products in a manner intended by Alarm.com to cause infringement of the '592 Patent.

86.    Alarm.com performed the acts that constitute inducement with knowledge or at least willful blindness that the induced acts would constitute infringement. At least through the filing of this Complaint, Alarm.com has received actual notice that its distributors and customers directly infringe the Asserted Claims of the '592 Patent and that its own acts induce such infringement.

87.    Alarm.com indirectly infringes the '592 Patent in violation of 35 U.S.C. § 271(c) by knowingly and intentionally contributing to infringement of at least the Asserted Claims of the '592 Patent by others, including Alarm.com's distributors and customers who purchase and use the accused products.

88.     Alarm.com's affirmative acts of selling infringing smart thermostats and providing those products to distributors and customers contribute to the infringement of the '592 Patent. The Alarm.com Accused Products are specially made or adapted for use in infringement of the '592 Patent and are not staple articles of commerce suitable for substantial noninfringing use.

89.     Alarm.com contributed, and is contributing, to the infringement of others with knowledge or at least willful blindness that the Alarm.com Accused Products are specially made or adapted for use in an infringement of the '592 Patent and are not staple articles of commerce suitable for substantial noninfringing use. Through the filing of this Complaint, Alarm.com has received actual notice that its acts constitute contributory infringement.

90.     The Alarm.com Accused Products satisfy all limitations of at least the '592 Patent Asserted Claims. A claim chart comparing exemplary claim elements of some of the Asserted Claims of the '592 Patent to the Alarm.com Accused Products is attached as Exhibit 8.

91.     At least as of the filing of this Complaint, Alarm.com is on notice that its infringement has been, and continues to be, knowing, intentional and willful.

92.     Alarm.com's acts of infringement of the '592 Patent have directly and proximately caused, and will continue to cause Causam damages for which it is entitled to compensation pursuant to 35 U.S.C. § 284.

93.     Alarm.com's acts of infringement of the '592 Patent have directly and proximately caused, and will continue to cause, Causam immediate and irreparable harm, for which Causam has no adequate remedy at law, unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.

## COUNT VII
### (Direct Infringement of U.S. Patent No. 8,805,552)

94.     Causam realleges and incorporates by reference the foregoing paragraphs, as if

fully set forth herein.

95.     Causam owns all rights, title, and interest in the '552 Patent, entitled "Method and Apparatus for Actively Managing Consumption of Electric Power Over an Electric Power grid," duly and legally issued by the PTO on August 12, 2014. *See* Ex. 4.

96.     The '552 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

97.     Alarm.com has had notice of the '552 Patent since at least the filing of this Complaint.

98.     Alarm.com has directly infringed the '552 Patent— literally and/or through the doctrine of equivalents — by making, using, selling, offering for sale in the United States, and/or importing into the United States smart thermostats and components thereof that practice at least claims 1-9, 16, 19-28, and 30-32 of the '552 Patent ("the '552 Patent Asserted Claims"), including but not limited to the accused products. Through these actions, Alarm.com directly violates 35 U.S.C. § 271(a).

99.     Based on this publicly available information, Alarm.com makes, uses, offers for sale, sells, and/or imports certain products, such as the Alarm.com Smart Thermostat; the ADC-T2000; the ADC-T3000; and the Alarm.com Smart Thermostat B36-T10, that directly infringe, literally and/or under the doctrine of equivalents, at least the Asserted Claims of the '552 Patent.

100.     The Alarm.com Accused Products satisfy all limitations of at least the '552 Patent Asserted Claims. A claim chart comparing exemplary claim elements of some of the '552 Patent Asserted Claims to the Alarm.com Accused Products is attached as Exhibit 9.

101.     At least as of the filing of this Complaint, Alarm.com is on notice that its infringement has been, and continues to be, knowing, intentional and willful.

102.     Alarm.com's acts of infringement of the '552 Patent have directly and

proximately caused and will continue to cause Causam damages for which it is entitled to compensation pursuant to 35 U.S.C. § 284.

103.    Alarm.com's acts of infringement of the '552 Patent have directly and proximately caused, and will continue to cause, Causam immediate and irreparable harm, for which Causam has no adequate remedy at law, unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.

## COUNT VIII
### (Indirect Infringement of U.S. Patent No. 8,805,552)

104.    Causam realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

105.    Alarm.com has had notice of the '552 Patent since at least the filing of this Complaint.

106.    Alarm.com indirectly infringes the '552 Patent in violation of 35 U.S.C. § 271(b) by actively encouraging and inducing its customers and end users to use the Alarm.com Accused Products in ways that directly infringe at least claims 1-9, 16, 19-28, and 30-32 of the '552 Patent ("the '552 Patent Asserted Claims"). Defendant does so intentionally and knowing that its customers will directly infringe the '552 Patent Asserted Claims through the normal and customary use of the Accused Products.

107.    Alarm.com's affirmative acts of providing instructions, manuals, training, guides, marketing materials, and demonstrations induces distributors and customers to use the Alarm.com Accused Products in a manner intended by Alarm.com to cause infringement of the '552 Patent.

108.    Alarm.com performed the acts that constitute inducement with knowledge or at least willful blindness that the induced acts would constitute infringement. At least through the filing of this Complaint, Alarm.com has received actual notice that its distributors and customers

directly infringe the '552 Patent Asserted Claims that its own acts induce such infringement.

109.     Alarm.com also indirectly infringes the '552 Patent in violation of 35 U.S.C. § 271(c) by knowingly and intentionally contributing to infringement of at least the '552 Patent Asserted Claims by others, including Alarm.com's distributors and customers who purchase and use the Alarm.com Accused Products.

110.     Alarm.com's affirmative acts of selling infringing smart thermostats and providing those products to distributors and customers contribute to the infringement of the '552 Patent. The Alarm.com Accused Products are specially made or adapted for use in infringement of the '552 Patent and are not staple articles of commerce suitable for substantial noninfringing use.

111.     Alarm.com contributed, and is contributing, to the infringement of others with knowledge or at least willful blindness that the Alarm.com Accused Products are specially made or adapted for use in an infringement of the '552 Patent and are not staple articles of commerce suitable for substantial noninfringing use. Through the filing of this Complaint, Alarm.com has received actual notice that its acts constitute contributory infringement.

112.     The Alarm.com Accused Products satisfy all limitations of at least the '552 Patent Asserted Claims. A claim chart comparing exemplary claim elements of some of the '552 Patent Asserted Claims to the Alarm.com Accused Products is attached as Exhibit 9.

113.     At least as of the filing of this Complaint, Alarm.com is on notice that its infringement has been, and continues to be, knowing, intentional and willful.

114.     Alarm.com's acts of infringement of the '552 Patent have directly and proximately caused and will continue to cause Causam damages for which it is entitled to compensation pursuant to 35 U.S.C. § 284.

115.     Alarm.com's acts of infringement of the '552 Patent have directly and proximately caused, and will continue to cause, Causam immediate and irreparable harm, for which Causam has no adequate remedy at law, unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.

## **PRAYER FOR RELIEF**

WHEREFORE, Causam prays for the entry of a judgment from this Court in its favor and against Defendant Alarm.com and respectfully requests the following relief:

(a)     A judgement in favor of Plaintiff that Defendant has directly infringed, contributorily infringed, and induced infringement of the Asserted Patents under 35 U.S.C. § 271;

(b)     Granting a preliminary and permanent injunction precluding Alarm.com and its officers, directors, agents, employees, attorneys, and all others in active concert or participation with Alarm.com, from making, using, offering to sell, or importing into the United States any system, and/or using, offering to sell, or selling any service or method, that falls within the scope of any claim of the Asserted Patents;

(c)     Awarding Causam damages for Defendant's infringement of the Asserted Patents, together with interest;

(d)     Declaring that Defendant's infringement of the Asserted Patents has been and is willful;

(e)     Awarding Causam increased damages including treble damages under 35 U.S.C. § 284 for infringement of the Asserted Patents;

(f)     Declaring this to be an "exceptional case" within the meaning of 35 U.S.C. § 285, entitling Causam to an award of its reasonable attorney fees, expenses, and costs in this action; and

(g)    Awarding Causam such other and further relief as this Court may deem to be just and proper.

## JURY TRIAL DEMAND

Causam demands a trial by jury on all issues so triable.

DATED: July 22, 2021

Respectfully submitted,

KING & SPALDING LLP

_/s/ Abby L. Parsons_

Abby L. Parsons
Texas Bar No. 24094303
KING & SPALDING LLP
1100 Louisiana Street, Suite 4100
Houston, TX 77002
Telephone: (713) 751-3200
aparsons@kslaw.com

Christopher C. Campbell
KING & SPALDING LLP
1650 Tysons Blvd 4th Floor,
McLean, VA 22102
Telephone: (703) 245-1000
ccampbell@kslaw.com

Jeffery M. Telep*
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 737-0500
jtelep@kslaw.com

Britton F. Davis*
Brian Eutermoser*
KING & SPALDING LLP
1401 Lawrence Street, Suite 1900
Denver, CO 80202
Telephone: (720) 535-2300
bdavis@kslaw.com
beutermoser@kslaw.com

_Counsel for Plaintiff,_
_Causam Enterprises, Inc._

*_pro hac vice_ to be filed